**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alice JAMES, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles MOORE, Defendant-Appellant.**

**Nos. 16873, 16876.**

United States Court of Appeals Sixth Circuit.

June 7, 1967.

Edward F. Bell, Detroit, Mich., for appellant James.

Seth H. Barsky (Court-appointed), Detroit, Mich. (Caplan & Barsky, Detroit, Mich., on the brief), for appellant Moore.

Milton J. Trumbauer, Jr., Asst. U. S. Atty., Detroit, Mich. (Lawrence Gubow, U. S. Atty., Detroit, Mich., on the brief), for appellee.

Before WEICK, Chief Judge, PECK, Circuit Judge, and CECIL, Senior Circuit Judge.

WEICK, Chief Judge.

Appellants, Alice James and Charles Moore, and seven others were charged in a thirteen-count indictment with conspiracy to violate the narcotics laws and with the substantive offenses of illegal possession and sale of narcotics. 21 U.S. C. §§ 173, 174 and 26 U.S.C. § 4705(a).

The jury disagreed as to Count I of the indictment which charged James with

conspiracy, but found her guilty on Count VI which charged her with the substantive offense of possession of narcotics. She was sentenced to five years' imprisonment.

At the close of the Government's case, the Court directed a judgment of acquittal in favor of Moore on the conspiracy Count I, and Moore was found guilty by the jury on four counts (Counts VIII, IX, X and XI) which charged him with the substantive offenses of possession and sale of narcotics. He was sentenced to five years' imprisonment.

These appeals concern only Appellants James and Moore, and will be considered separately.

### Appellant Alice James

Appellant James' sole complaint is that the trial court erred in denying her motion to suppress the evidence of narcotics seized by federal narcotics agents in a search made without a search warrant, of the apartment in which she was living.

The pertinent facts relative to the search and seizure were not in dispute. They are set forth in Appellant's brief, as follows:

"On September 26, 1963, at 9:35 p. m., federal narcotics agents and Highland Park Police Officers arrived at 354½ Elmhurst Street, an upstairs flat, in the City of Highland Park, Michigan, allegedly for the purpose of arresting the appellant, Alice James. There were approximately ten (10) officers present to assist in the arrest. It was the stated purpose of the narcotics agent to arrest Miss James and another person for alleged crimes that had been committed prior to September 26, 1963. The warrant was based on facts alleged to have occurred June 3, 1963.

"The complaint and warrant were secured by the narcotics agents either one (1) or two (2) days prior to September 26, 1963. There was no request made for the issuance of a search warrant at that time or at any other time.

"Agent Miller and the other arresting officers met first in Highland Park Police Headquarters on the night of September 26, 1963, before going to appellant's residence. At some time prior to searching appellant's residence, Agent Miller gave out assignments to his brother officers designating certain officers to search certain rooms.

"The search of the premises lasted for approximately an hour with two (2) officers being assigned to each room.

"Agent Miller with another searched one of the bedrooms and in so doing discovered a certain quantity of narcotic drugs in a vacuum cleaner, to wit 23.27 grams of heroin. The trial court found that the agents were admittedly not searching the premises for evidence of the alleged past crime that occurred on June 3, 1963."

(Appellant James Brief, pp. 1–2)

In the Government's brief is the statement "Appellee accepts the Statement of Facts as set forth by Appellant."

It is the contention of the Government that the search was a reasonable one; that it was incident to a lawful arrest made upon a warrant issued from one to two days prior thereto; and that the narcotics agents had the right to search for and to seize the narcotics as they were contraband. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). In *Rabinowitz,* the Supreme Court said at page 63, 70 S.Ct. at page 434:

"What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case."

It is the contention of Appellant James that her arrest was a mere pretext for

a general exploratory search of her home for narcotics. She relies on Go-Bart v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1931); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

Since the agents had ample time to secure a warrant for her arrest, they obviously had time to secure a search warrant to search her residence, but did not obtain one. The offense for which the arrest warrant was issued took place on June 3, 1963. The arrest was not made until September 26, 1963, on a warrant obtained only one or two days prior thereto. No explanation has been offered as to why the agents waited for more than three and one-half months after the offense had been committed, to obtain the arrest warrant. Appellant James had been living in the searched apartment with Sanders Mallory, Jr., since the middle of 1962. The agents had information that James and Mallory had been using their residence (first Tuxedo Street, then the apartment on Elmhurst Street) as their place of business for the distribution of narcotics, from the latter part of 1961 up until the date of the arrest.

The Government contends, however, that the only reliable information which it had was concerning violations which took place at the apartment on June 3, 1963 and July 9, 1963, and this information was too remote in time from September 26, 1963 to obtain a search warrant. But the fact is that the narcotics agents made no attempt to secure a search warrant. The testimony of Agent Miller was that the question of whether there was sufficient evidence to obtain a search warrant did not arise and he made no determination as to the need for it. District Supervisor Ellis testified that there was no discussion about obtaining a search warrant.

At the hearing on the motion to suppress, a question was raised as to the sufficiency of the complaint upon which the arrest warrant was issued. The Assistant United States Attorney conceded in open Court that for the purpose of the motion to suppress, the complaint was deficient. If the complaint was deficient, then it follows that the arrest warrant on which it was based was likewise deficient. But the Government contended that with all the information which it had as above set forth, the agents had probable cause to make an arrest without a warrant. If the agents had probable cause to make an arrest without a warrant, it would seem to us that the same probable cause ought to have been sufficient for them to obtain a search warrant.

In the evening of September 26, 1963, approximately ten agents and police officers assembled at the Highland Park Police Station for the avowed purpose of planning the arrest of James and Mallory. They intended to search the apartment if an arrest was made. After making their plans, they descended en masse upon the apartment at 9:35 P.M., and one or two officers were assigned by Agent Miller to search each of the five rooms of the apartment. Mallory was not present but was arrested later. James was arrested in the dining room of the apartment, and the search was commenced in each of the five rooms and continued for one hour. The officers remained in the apartment for two and one-half hours. In a bedroom closet was found a vacuum cleaner which contained the narcotics.

■ Taking into account all of the admitted facts and circumstances of the case, including the large aggregation of agents and police officers, it seems to us that the agents and officers were interested in something more than merely making an arrest. It is clear that their primary purpose was to make a general exploratory search of the apartment, with the hope of finding narcotics. This search, in our judgment, was unreasonable and violated the rights of Appellant James under the Fourth Amendment to

the Constitution. United States v. Harris, 321 F.2d 739 (6th Cir. 1963).

 The mere fact that the articles seized were contraband, does not make the evidence admissible where the search was conducted in violation of the Fourth Amendment. The owner of the contraband, however, was not entitled to have it returned. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951).

It follows that the District Court erred in denying the motion to suppress. The judgment of conviction is reversed and the cause is remanded with instructions to grant the motion to suppress.

### Appellant Charles Moore

Appellant Moore complains that he was prejudiced because he was indicted for conspiracy. He contends that the conspiracy indictment resulted in a protracted trial and there was no evidence to connect him with the conspiracy. He asserts that the only evidence offered against him consisted of two instances of possession and sale of narcotics.

He does not claim, however, that the evidence was insufficient to support his conviction of the substantive offenses of possession and sale of narcotics.

In his brief Appellant Moore states:

"No objection is raised as to joinder of the claims in both the conspiracy count or the substitution [substantive] counts in this indictment of the trial, as Appellant concedes that such was proper as they dealt with related crimes."

He relies principally on the dissenting opinion in Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). The basis for the dissent in *Schaffer* was that when the conspiracy count was dismissed, the substantive counts in the indictment were not properly joined as they did not involve related offenses. Here, it is conceded that the substantive offenses dealt with related crimes.

There was no claim of bad faith on the part of the Government in obtaining the indictment containing the conspiracy charge. Appellant Moore did not even file a motion for a new trial.

 Moore has failed to show that he was prejudiced by the joinder of offenses in the indictment. Without such a showing he has no ground for complaint. Rule 14 Fed.R.Crim.P. Schaffer v. United States, supra; United States v. Vida, 370 F.2d 759 (6th Cir. 1966); United States v. O'Brien, 319 F.2d 437 (7th Cir. 1963); United States v. Manfredi, 275 F.2d 588 (2nd Cir. 1960). His rights were adequately protected by the cautionary instructions of the trial Judge to the jury, that "the jury should give separate consideration and render separate verdicts with respect to each defendant and to each count."

The judgment of conviction of Appellant Moore is therefore affirmed.