STATE OF NORTH CAROLINA v. WILLIE HENDERSON WOMBLE

No. 28

(Filed 14 April 1977)

1. **Homicide §§ 4, 14; Constitutional Law § 28— felony murder rule — burden of proof on State**

 The felony murder rule as stated in G.S. 14-17 does not unconstitutionally relieve the State of the burden of proving beyond a reasonable doubt every element of the crime of first degree murder.

2. **Criminal Law § 163— objections to jury charge — time for making**

 Objections to that portion of the charge which reviews the evidence and states the contentions of the parties must be made before

the jury retires so as to give the trial judge an opportunity to correct any misstatements; otherwise, any objection to the misstatements will be deemed to have been waived and will not be considered on appeal.

3. Homicide § 21— first degree murder — defendant as lookout — sufficiency of evidence

Evidence was sufficient for the jury in a first degree murder prosecution where it tended to show that the daughter of the victim observed two black males follow her father behind a store counter, one of the males shoot her father, and the blacks flee from the store after the shooting; the black who shot the victim wore a red and black or red and blue bandanna over the lower portion of his face; defendant confessed that he was paid $20 to be a "lookout" for an armed robbery of a store; one of the perpetrators of the crime was noted by defendant in his statement as wearing a red and blue handkerchief around his neck and as being armed with a weapon; and defendant was paid the $20 after the robbery and told not to talk to anyone about the robbery.

APPEAL of right pursuant to G.S. 7A-27(a) from *Braswell, J.,* at the 5 July 1976 Criminal Session of GRANVILLE Superior Court.

Defendant was tried upon an indictment, proper in form, for the murder of Roy Brent Bullock. Upon the return of a verdict of guilty of first degree murder, defendant was sentenced to life imprisonment.

The evidence introduced by the State tended to show that on the evening of 18 November 1975, Roy Brent Bullock was operating the Food Mart in Butner, North Carolina. Between 9:00 and 9:30 p.m. on that evening, Bullock's daughter, Lois Marie, age thirteen, was in a "walk-in" cooler placing merchandise on the display racks of the cooler. The cooler had glass doors which enabled Lois to see her father standing at the counter of the store.

While in the cooler, Lois saw two black males at the counter talking to her father. She then saw a flash of fire come from a gun which one of the men was carrying and she heard two shots. The males then ran from the store. Lois was unable to give a detailed description of the two men. However, she stated that the man who held the gun and fired the shots was wearing a red and blue or red and black bandanna pulled over the bottom half of his face, had short hair, and was taller than the other male.

It was stipulated that Bullock died as a result of the gunshot wounds received on this occasion.

Officer Lorenzo Leathers testified that on 6 December 1975, he questioned defendant concerning certain matters unrelated to this case. After being fully apprised of his constitutional rights, defendant told Leathers that he knew nothing concerning the matters about which he was being questioned. However, defendant stated that he did know about "some matter that had taken place outside Durham." He then indicated he knew something about the robbery which had occurred at Butner, and thereupon made a statement to Leathers. In this statement, defendant admitted that he was paid twenty dollars for acting as the "lookout" during the robbery of a store in Butner. This robbery was committed by Joe Perry, Albert Willis and one "Boo Boo," all of whom were armed—Perry with a .22 automatic pistol, "Boo Boo" with a .41 Magnum pistol and Willis with between a .45 and .25 automatic. He further stated that Joe Perry had a blue and red handkerchief tied around his neck at the time of the robbery. The statement was first reduced to longhand by Leathers and signed by defendant. Later, the statement was typewritten and also signed by defendant.

Defendant testified in his own behalf. He stated that on the evening of 18 November 1975 he was playing cards at the home of his friends, Leroy and Shirlyn Walters. Defendant further testified that he had been coerced into signing the statements prepared by Leathers and that the statements were the creation of Leathers' imagination. Defendant also offered the testimony of the Walters who corroborated defendant's statement that he was at their home on the evening of 18 November 1975.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Attorney General Rufus L. Edmisten and Associate Attorney Elizabeth C. Bunting for the State.*

*Felix B. Clayton and William Land Parks for defendant appellant.*

MOORE, Justice.

[1]  Defendant first contends that he was deprived of his liberty without due process of law under the Fifth and Four-

teenth Amendments to the United States Constitution and under Article I, Section 19, of the North Carolina Constitution. This contention is based upon the premise that the felony-murder rule relieves the prosecution of the burden of proving beyond a reasonable doubt every element of the crime of first degree murder. More particularly, defendant objects to the operation of the felony-murder rule upon the ground that it relieves the State of the necessity of proving actual malice on the part of defendant at the time he committed the crime. For this proposition, he cites *In re Winship,* 397 U.S. 358, 25 L.Ed. 2d 368, 90 S.Ct. 1068 (1970), and *Mullaney v. Wilbur,* 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975).

Defendant's argument is not well taken and has been rejected by this Court in *State v. Swift,* 290 N.C. 383, 226 S.E. 2d 652 (1976). In *Swift,* we held that *Mullaney* did not signal the demise of our felony-murder rule, as stated in G.S. 14-17. The Court in *Mullaney* condemned a law of the State of Maine which affirmatively shifted the burden of proving a critical element of the State's case to the defendant. The holding of the case was that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." 421 U.S. at 704, 44 L.Ed. 2d at 522, 95 S.Ct. at 1892.

The felony-murder rule in this jurisdiction is contained in G.S. 14-17, and provides in pertinent part:

"A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, kidnapping, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death. . . . " (By virtue of the decision of the Supreme Court of the United States in *Woodson v. North Carolina,* 428 U.S. 280, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (1976), and the provisions of the 1973 Session Laws, c. 1201, s. 7 (1974 Session), the punishment for first degree murder under this statute is now life imprisonment rather than death. *See State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976).)

This rule does not place any burden of proof upon a criminal defendant. In present case, the State was required to prove, beyond a reasonable doubt, that a murder was committed in the perpetration or attempted perpetration of a robbery, and that defendant participated in that crime. Upon a finding by the jury that these elements are proved beyond a reasonable doubt, defendant is, by statute, guilty of first degree murder. There is no requirement in the statutory definition of the crime that the State prove malice, premeditation or deliberation. Thus, the State is not relieved of the burden of proving malice, since malice is not an element of the crime. Further, no burden is placed upon a defendant to prove or disprove any of the elements of the crime contained in G.S. 14-17.

In his charge to the jury, the trial judge clearly placed the burden of proving every element of the crime upon the State. The judge also properly charged that the burden of proving an alibi did not rest upon defendant but rather the State had the burden of proving beyond a reasonable doubt that defendant participated in the crime. Accordingly, since no burden of proof was placed upon defendant under G.S. 14-17, we are of the opinion that the felony-murder rule is constitutionally sound and this assignment is without merit. See State v. Evans, 349 A. 2d 300 (Md. App. 1975).

[2] Defendant next contends that the trial judge improperly recapitulated the evidence. The improprieties about which defendant now complains were not objected to at trial. Therefore, we apply the rule that objections to that portion of the charge which reviews the evidence and states the contentions of the parties must be made before the jury retires so as to give the trial judge an opportunity to correct any misstatements. Otherwise, any objection to the misstatements will be deemed to have been waived and will not be considered on appeal. State v. Cawthorne, 290 N.C. 639, 227 S.E. 2d 528 (1976) ; State v. Watson, 287 N.C. 147, 214 S.E. 2d 85 (1975) ; State v. Gaines, 283 N.C. 33, 194 S.E. 2d 839 (1973) ; State v. Virgil, 276 N.C. 217, 172 S.E. 2d 28 (1970). Despite this waiver, we have examined the charge and have been unable to locate any material misstatements in the evidence sufficient to warrant a new trial.

In several assignments of error, defendant contends that there was no evidence which would connect defendant with the robbery and the murder of Mr. Bullock. Defendant did not make

a motion for judgment as of nonsuit or for dismissal pursuant to G.S. 15-173 at the close of all the evidence. Hence, we consider this contention under G.S. 15-173.1 as a challenge to the sufficiency of the State's evidence. *State v. McKinney,* 288 N.C. 113, 215 S.E. 2d 578 (1975) ; *State v. Rigsbee,* 285 N.C. 708, 208 S.E. 2d 656 (1974). Therefore, we review the evidence and apply the well settled and long-standing rule that:

> " . . . On such motion the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable intendment thereon and every reasonable inference therefrom. Contradictions and discrepancies, even in the State's evidence, are for the jury to resolve and do not warrant nonsuit. Only the evidence favorable to the State is considered, and defendant's evidence relating to matters of defense or defendant's evidence in conflict with that of the State is not considered. . . . " *State v. Everette,* 284 N.C. 81, 84, 199 S.E. 2d 462, 465 (1973).

[3] In present case, the evidence tended to show that on 18 November 1975, Lois Marie Bullock saw two black males enter the Food Mart in Butner, North Carolina. The two males followed her father, Mr. Bullock, behind the counter of the store. She then saw one of the men shoot her father. The males then fled from the store on foot. The male who shot her father wore a red and black or red and blue bandanna over the lower portion of his face. Mr. Bullock died as a result of the wounds inflicted. From defendant's statement to Officer Leathers, it appeared that defendant was paid twenty dollars to be the "lookout" for an armed robbery of a store in Butner. One of the actual perpetrators of the crime, Joe Perry, was noted by defendant in his statement as wearing a red and blue handkerchief around his neck and as being armed with a weapon. Defendant was paid the twenty dollars after the robbery and told by Perry not to talk to anyone about the robbery. We hold that this evidence considered in the light most favorable to the State is sufficient to be submitted to the jury. This assignment is overruled.

Finally, defendant assigns error to the trial judge's signing of the judgment. For this proposition, he cites no authority but rather he recapitulates certain arguments which were advanced under his other assignments. In *State v. McMorris,* 290

N.C. 286, 225 S.E. 2d 553 (1976), we held that such an exception raises nothing for review under Rule 28 of the North Carolina Rules of Appellate Procedure. Accordingly, since we have already examined all the issues purportedly raised under this assignment and answered them unfavorably to defendant, we overrule this assignment.

Our examination of the entire record discloses that defendant had a fair trial, free from prejudicial error.

No error.