STATE OF WEST VIRGINIA

*v.*

PAUL EMERSON SIMS

(No. 13906)

Decided November 14, 1978.

*Galbraith, Seibert, Kasserman, Farnsworth, Gillenwater & Glauser, Elba Gillenwater, Jr., O'Brien & Cassidy, Patrick S. Cassidy* for plaintiff-in-error.

*Chauncey H. Browning*, Attorney General, *Gregory E. Elliott*, Assistant Attorney General, for defendant-in-error.

MILLER, JUSTICE:

Paul Sims, after pleading guilty to first degree murder, contends that he was coerced into the plea as a result of the trial court's ruling in connection with the felony-murder rule.

The claimed coercion occurred when the trial court ruled preliminarily to the trial that as a matter of law Sims' defense of an accidental discharge of his shotgun during the commission of a burglary would not permit the jury to reduce the crime below first degree murder. We refuse to overturn the guilty plea.

The operative facts are these: Around 2:00 a.m. on January 16, 1976, the defendant Paul Sims, Clay Grimmer and Arthur Burns went to the home of Mr. and Mrs. Oscar Schmidt located in Brooke County, West Virginia. After cutting the telephone wires on the outside of the house, Sims and Burns proceeded onto the front

porch of the home. Both men were armed. Sims carried a 20-gauge sawed-off shotgun and Burns had a pistol.

The Schmidts' bedroom adjoined the porch. While Sims remained on the porch adjacent to the windows, his companion Burns broke the windows and stepped through them into the bedroom. Sims pointed his shotgun and a flashlight into the bedroom. Shortly after Burns had entered the bedroom, Walter Schmidt, the son of Oscar Schmidt, entered the bedroom from another portion of the house.

Apparently as a result of this distraction, Oscar Schmidt was able to seize his pistol and fire it at Sims. The bullet struck Sims' right arm, and he claimed this caused an involuntary muscle spasm in his trigger finger which resulted in the discharge of the shotgun, killing Walter Schmidt.

In support of the defendant's theory that the bullet wound caused an involuntary muscle reaction, his attorneys took a deposition from the neurologist who treated him for the injury. Since the doctor was not available for testimony at the trial, the prosecuting and defense attorneys stipulated that his deposition would be read at trial.

Based upon his examination and treatment of the defendant's wound, together with his expert knowledge of the involved nerves and muscles, the doctor concluded it was possible that the bullet wound caused an involuntary muscle reflex resulting in the discharge of the shotgun.

It is to be noted that the State did not agree with the involuntary reflex theory and vigorously cross-examined the doctor, who conceded that the same type of wound might instead have caused the defendant to drop the gun.

The trial court proceeded to rule *in limine* that even assuming the defendant's theory to be true, it would not present a factual defense to mitigate the first degree

murder verdict required under this State's felony-murder rule.

## I

Initially, we recognize that this is a direct appeal from a sentence imposed on a guilty plea and that in the second syllabus of *State ex rel. Wright v. Boles,* 149 W. Va. 371, 141 S.E.2d 76 (1965), we stated:

> "An appeal ordinarily does not lie in a criminal case from a judgment of conviction rendered upon a plea of guilty."

Notwithstanding this general rule, this Court has entertained direct appeals in criminal convictions based on a guilty plea. *See, e.g., State v. Barnett,* ___ W.Va. ___, 240 S.E.2d 540 (1977); *State v. Cunningham,* ___ W.Va. ___, 236 S.E.2d 459 (1977); *State v. Stone,* 101 W.Va. 53, 131 S.E. 872 (1926); *State v. Hill,* 81 W.Va. 676, 95 S.E. 21 (1918).

In none of the foregoing cases has there been any attempt to formulate a rule as to when a direct appeal would be appropriate. However, it is clear that in each of these cases there was a claim made relating to the voluntariness of the guilty plea. In other jurisdictions it has been rather uniformly recognized that there are limited grounds which will warrant the direct appeal of a criminal conviction based on a guilty plea. The Pennsylvania court has expressed this principal in *Commonwealth v. Bunch,* 351 A.2d 284 (Pa. 1976):

> "We have in the past repeatedly held that the only grounds for appeal following a guilty plea which has resulted in a judgment of murder in the second degree are the voluntariness of the plea and the legality of the sentence (including in the latter category the jurisdiction of the sentencing court)." [Pa. 351 A.2d at 286]

*See, e.g., McKinnon v. State,* 526 P.2d 18 (Alaska 1974); *State v. Lerner,* 113 Ariz. 284, 551 P.2d 553 (1976) (by implication); *People v. Laudermilk,* 67 Cal. 2d 272, 61 Cal. Rptr. 644, 431 P.2d 228 (1967), *cert. denied,* 393 U.S. 861,

21 L. Ed. 2d 128, 89 S.Ct. 139; *People v. Rondeau,* 8 Ill. App. 3d 286, 291 N.E.2d 666 (1972); *Henderson v. State,* 198 Kan. 655, 426 P.2d 92 (1967) (by implication); *State v. Torres,* 281 So.2d 451 (La. 1973); *English v. State,* 16 Md. App. 439, 298 A.2d 464 (1973); *People v. Francabandera,* 354 N.Y.S. 2d 609, 33 N.Y. 2d 429, 310 N.E.2d 292 (1974); *State v. Saylors,* 70 Wash. 2d 7, 422 P.2d 477 (1966).

We conclude that a direct appeal from a criminal conviction based on a guilty plea will lie where an issue is raised as to the voluntariness of the guilty plea or the legality of the sentence. However, there remains the question of the scope of review available.

There is an obvious parallelism between a direct appeal attacking the voluntariness of a guilty plea and utilizing a writ of habeas corpus to attack the guilty plea. In *Call v. McKenzie,* ___ W.Va. ___, 220 S.E.2d 665 (1975), we discussed to some degree the scope of review available in habeas corpus where a guilty plea had been made. There, we relied upon the Brady Trilogy, where the United States Supreme Court held that where a guilty plea is sought to be set aside in habeas corpus on the basis that it was induced by an unconstitutional confession, the controlling test is the competency of the advice given by the defendant's counsel.[1] *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S.Ct. 1463 (1970); *McMann v. Richardson,* 397 U.S. 759, 25 L. Ed. 2d 763, 90 S.Ct. 1441 (1970); *Parker v. North Carolina,* 397 U.S. 790, 25 L. Ed. 2d 785, 90 S.Ct. 1458 (1970).

In *Tollett v. Henderson,* 411 U.S. 258, 36 L. Ed. 2d 235, 93 S.Ct. 1602 (1973), this standard was extended to cover other legal or factual defenses which may exist and upon which counsel may be expected to reflect and advise the defendant. *Tollett* stated the standard of competency for counsel as follows:

---

[1] *Call v. McKenzie* stressed the adequacy of the record of a guilty plea proceeding, a point which the United States Supreme Court has stressed at some length. *Blackledge v. Allison,* 431 U.S. 63, 52 L. Ed. 2d 136, 97 S.Ct. 1621 (1977).

"A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry. And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, McMann, supra, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." [411 U.S. at 267, 36 L. Ed. 2d at 243, 93 S.Ct. at 1608]

Accordingly, the controlling test as to the validity of a guilty plea, when it is attacked in a habeas corpus proceeding on grounds that fall within those on which counsel might reasonably be expected to advise, is the competency of the advice given by counsel.

Arising from this rule are several requirements which must be met in order for the habeas corpus attack to be successful in this area. First, it must be shown that counsel did act incompetently under the *Tollett* standard. Second, the incompetency must relate to a matter which would substantially affect the fact-finding process if the case had proceeded to trial. Finally, the guilty plea must have been motivated by this error.[2] *Common-*

---

[2] The claim of incompetency of counsel implicates the Sixth Amendment right to effective assistance of counsel. A claim of incompetency of counsel is not the only basis on which a guilty plea can be undermined. It is a part of the more general rule that requires a guilty plea to be made voluntarily, upon proper advice and with a full understanding of the consequences. *Machibroda v. United States*, 368 U.S. 487, 493, 7 L. Ed. 2d 473, 478, 82 S.Ct. 510, 513 (1962); *Kercheval v. United States*, 274 U.S. 220, 223-24, 71 L. Ed. 1009, 1012, 47 S.Ct. 582, 583 (1927). We have long adhered to a similar rule. *Riley v. Ziegler*, ____ W. Va. ____, 241 S.E.2d 813 (1978); *Call v. McKenzie*, ____ W. Va. ____, 220 S.E.2d 665 (1975); *State ex rel. Clancey v. Coiner*, 154 W. Va. 857, 179 S.E.2d 726 (1971); *State ex. rel. Post v. Boles*, 147 W. Va. 26, 124 S.E. 2d 697 (1962); *cert.*

*wealth v. Marsh,* 440 Pa. 590, 593, 271 A.2d 481, 483 (1970).

The issue before us on this direct appeal relates to the voluntariness of the guilty plea based on the theory that the plea was coerced as a result of the court's preliminary ruling that deprived the defendant of a key factual defense. However, the focus is not upon the court's ruling, but the competency of defendant's counsel in advising the guilty plea in light of the court's ruling.

The fact that the trial court made the *in limine* ruling that an involuntary killing committed during an attempted burglary did not constitute a defense to the crime would not alter the duty of defense counsel under the competency standard to advise as to the correctness of the ruling. To hold otherwise would destroy counsel's obligation to assess independently the facts and law of his client's case. If counsel views the trial court's rulings to be in error, his obligation is to so advise his client, and if the client so desires, to proceed to trial and appeal the error.

The controlling test as to the voluntariness of a guilty plea, when it is attacked either on a direct appeal or in a habeas corpus proceeding on grounds that fall within

---

*denied,* 371 U.S. 833, 9 L. Ed. 70, 83 S.Ct. 57; *In re Eplin,* 132 W. Va. 610, 53 S.E.2d 614 (1949); *State v. Stone,* 101 W. Va. 53, 131 S.E. 872 (1926); *State v. Hill,* 81 W. Va. 676, 95 S.E. 21 (1918); *Nicely v. Butcher,* 81 W. Va. 247, 94 S.E. 147 (1917); *State v. Stevenson,* 67 W. Va. 553, 68 S.E. 286 (1910).

There are other grounds in which counsel may not be directly implicated. *See, e.g., Blackledge v. Allison,* 431 U.S. 63, 52 L. Ed. 2d 136, 97 S.Ct. 1621 (1977); *Brooks v. Narick,* ___ W. Va. ___, 243 S.E.2d 841 (1978); *State ex rel. Clancy v. Coiner, supra; In re Eplin, supra; State v. Ward,* 112 W. Va. 552, 165 S. E. 803 (1932) (claim of broken plea bargain); *Henderson v. Morgan,* 426 U.S. 637, 49 L. Ed. 2d 108, 96 S.Ct. 2253 (1976); *Riley v. Ziegler, supra; Thomas v. Leverette,* ___ W. Va. ___, 239 S.E.2d 500 (1977) (inadequacy of record that plea was intelligently and voluntarily made); *Fontaine v. United States,* 411 U.S. 213, 36 L. Ed. 2d 169, 93 S.Ct. 1461 (1973) (claim of coerced plea); *Smith v. O'Grady,* 312 U.S. 329, 85 L. Ed. 859, 61 S.Ct. 572 (1941); *Nicely v. Butcher, supra* (claim plea induced by trickery).

those on which counsel might reasonably be expected to advise, is the competency of the advice given by counsel.

Furthermore, on a direct appeal, as well as in a habeas corpus proceeding, before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by this error.

Fortunately, we have a verbatim record setting out the guilty plea proceeding. It demonstrates that the trial court followed with considerable fidelity the *Call v. McKenzie* procedures at the time the guilty plea was taken. Since it was a serious crime, the trial court appointed two attorneys to represent the defendant. The record discloses that at the time the plea was entered, one of the defense attorneys in his interrogation of the defendant made it plain that the elements of the felony-murder rule had been outlined to the defendant.[3]

---

[3] "Q Paul, you are charged with the murder of one Walter Schmidt, and you are here today to enter your plea as you have indicated to your counsel and to the Court that you are prepared to do. Before entering your plea I would like to have you put on the record what you feel is the factual basis for your plea. Do you understand what is meant by the felony murder rule?

"A Yes.

"Q I have explained to you, have I not, that the State of West Virginia is prosecuting this case under that felony murder rule?

"A Yes.

"Q I have also explained to you, have I not, that the effect of that felony murder rule is to supply some of the elements requisite for a conviction of first degree murder, such as intent, premeditation, deliberation, wilfulness and malice; is that true?

"A Yes.

"Q Did you, on the night of January the sixteenth 1976, attempt to burglarize the home of Oscar Schmidt?

"A Yes.

"Q Now, without considering the effects of the felony murder rule, did you intend to kill Walter Schmidt?

"A No, sir.

. . . .

## II

From the law previously discussed, the guilty plea in this case can only be invalidated if it can be found that Sims' counsel was not acting with reasonable competency when he advised that an involuntary homicide would not mitigate the crime of felony-murder. There is no dispute that the killing occurred during the course of an attempted burglary. There is also no dispute that the guilty plea was prompted by defendant's belief that he had no defense to the felony-murder crime.[4]

Our inquiry is narrowed to a consideration of whether our felony-murder rule, which by statute makes the crime first degree murder, admits any amelioration from first degree by virtue of the fact that the homicide was accidental.

Our felony-murder statute alters the scope of the common law rule by confining its application to the crimes of arson, rape, robbery and burglary or the attempt to commit such crimes. W.Va. Code, 61-2-1.[5] Traditionally at

"Q On June 24th, 1976, this past Thursday, is it your understanding that this Court ruled that evidence of an involuntary muscle reflex or accidental killing would not be admissible on the question of your guilt or innocence?

"A That's right.

"Q And is it your understanding that on June the 24th 1976, this Court ruled that the only verdicts the jury would be permitted to reach would be murder in the first degree, with or without a recommendation of mercy, and not guilty?

"A That's correct.

"Q And isn't it true, in your belief, that the effect of such ruling was to rule out the only real defense which you and your counsel felt that you may have had?

"A That's true.

"Q Isn't it true that you have decided to plead guilty previously primarily because of the ruling of this Court on the basis of the factual basis that you have presented to this Court and your counsel's explanation of the felony murder rule to you?

"A That's true."

[4] See note 2 supra.

[5] "Murder by poison, lying in wait, imprisonment, starving, or by any wilful, deliberate and premeditated killing, or in the commis-

common law, the commission of, or the attempt to commit, any felony which resulted in a homicide was deemed murder.[6]

It is also important to remember that statutes creating two degrees of murder, such as W.Va. Code, 61-2-1, were not designed primarily to define the substantive elements of the particular types of first degree murder, but rather to establish categories of the common law crimes of murder for the purpose of setting degrees of punishment (W. Va. Code, 61-2-2 and -3), thereby altering the harsh common law principle that all murder was punishable by death.[7]

Our statute enumerates three broad categories of homicide constituting first degree murder: (1) murder by poison, lying in wait, imprisonment, starving; (2) by any wilful, deliberate and premeditated killing; (3) in the commission of, or attempt to commit, arson, rape, robbery or burglary.

As to the first two categories, this Court recognized in *State v. Abbott*, 8 W. Va. 741, 770-72 (1875), that the term "murder by poison, lying in wait, imprisonment, starving" does not require that premeditation or a specific intent to kill has to be shown, but to elevate the homicide to first degree murder a killing with malice must be proved and one of the four enumerated acts must be established:

"If it be proved that the killing was of such a character that, under ordinary circumstances, it

---

sion of, or attempt to commit, arson, rape, robbery or burglary, is murder of the first degree. All other murder is murder of the second degree."

[6] W. LaFave & A. Scott, *Handbook on Criminal Law* § 71, at 545 (1972); R. Perkins, *Criminal Law* 37-38 (2nd ed. 1969); 40 Am. Jur. 2d *Homicide* § 72; Annot., 50 A.L.R.2d 397.

[7] W. LaFave & A. Scott, *Handbook on Criminal Law* § 73, at 562 (1972); R. Perkins, *Criminal Law* 10-11; 40 Am. Jur. 2d *Homicide* § 7; 40 C.J.S. *Homicide* § 29. Some states have statutorily defined the crime of felony-murder in several different contexts. For a case illustrating the attendant confusion arising out of multiple statutory definitions of the felony-murder crime, see *People v. Satchell*, 6 Cal. 3d 28, 98 Cal. Rptr. 33, 489 P.2d 1361, 50 A.L.R. 3d 383 (1971).

would have been murder at common law, and the fact of lying in wait exist, that fact will make it a case of murder in the first degree." [8 W. Va. at 770-71]

*Abbott* relied in part on the Virginia case, *Commonwealth v. Jones,* 1 Leigh 598 (1829), which construed an earlier Virginia statute dividing certain homicides into first and second degree murder.[8]

*Jones* discussed the three general categories of first degree murder in this fashion, beginning with the statutorily "enumerated cases" of murder by poison, lying in wait, imprisonment, starving, torture or malicious whipping:

"In all these enumerated cases, the legislature has declared the law, that the perpetrator shall be held guilty of murder in the first degree, without further proof that the death was the ultimate result, which the will, deliberation and premeditation of the party accused sought. And the same authority has declared the law, that any other kind of killing, which is sought by the will, deliberation and premeditation of the party accused, shall also be murder in the first degree; but that as to this other kind of killing, proof

[8] The particular statute as set out on p. 610 of the opinion stated:
"The statute declares, 'that all murder which shall be perpetrated by means of poison—or by lying in wait—or by duress of imprisonment or confinement—or by starving—or by malicious, wilful and excessive whipping, beating or other cruel torture—or by any other kind of wilful, deliberate or premeditated killing—or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, or burglary, shall henceforth be deemed murder in the first degree. And all other kinds of murder shall be deemed murder in the second degree."

By 1849, the Virginia Legislature had altered the language of its statute to read:
"Murder by poison, lying in wait, imprisonment, starving, or any wilful, deliberate and premeditated killing, or in the commission of, or attempt to commit arson, rape, robbery or burglary, is murder of the first degree. All other murder is murder of the second degree." [Code of Virginia 1849, Chapter 191, Section 1]

This is the same as our present statute, W.Va. Code, 61-2-1.

must be adduced to satisfy the mind, that the death of the party slain was the ultimate result which the concurring will, deliberation and premeditation, of the party accused, sought. But to this general rule the same authority adds an exception, which is, that any death consequent upon the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary, shall be deemed murder in the first degree: and all other murder at common law, shall be deemed murder in the second degree." [1 Leigh at 611-12]

There can be no question that both this Court and the Virginia court have construed their identical statutory felony-murder rules so as not to require proof of the elements of malice, premeditation or specific intent to kill. It is deemed sufficient if the homicide occurs during the commission of, or the attempt to commit, one of the enumerated felonies. *State ex rel. Peacher v. Sencindiver*, ___ W.Va. ___, 233 S.E.2d 425 (1977); *Ford v. Coiner*, 156 W.Va. 362, 196 S.E.2d 91 (1972); *State v. Bragg*, 140 W.Va. 585, 87 S.E.2d 689 (1955); *State v. Williams*, 98 W.Va. 458, 127 S.E. 320 (1925); *Haskell v. Commonwealth*, 243 S.E.2d 477 (Va. 1978); *Akers v. Commonwealth*, 216 Va. 40, 216 S.E.2d 28 (1975).

While the foregoing authorities hold that malice, specific intent and premeditation are not elements of the crime of felony-murder, they do not directly state that an unintentional killing, if committed during a designated felony, is sufficient to bring into play the felony-murder crime.

We have not been cited nor have we found any case in this State or Virginia which has had occasion to discuss this precise aspect of the felony-murder crime. The general rule is that the homicide need not be intentional; it is sufficient if it occurs accidentally during the commission of, or the attempt to commit, the enumerated felony. *State v. Ferrari*, 112 Ariz. 324, 541 P.2d 921 (1975); *People v. Washington*, 62 Cal. 2d 777, 44 Cal. Rptr. 442, 402 P.2d 130 (1965); *People v. Morris*, 1 Ill. App. 3d 566, 274 N.E.2d 898 (1971); *People v. Lytton*, 257 N.Y. 310, 178

N.E. 290 (1931); *Commonwealth v. Yuknavich*, 448 Pa. 502, 295 A.2d 290 (1972); *Simpson v. Wainwright*, 439 F.2d 948 (5th Cir. Fla 1971), *cert. denied*, 402 U.S. 1011, 29 L. Ed. 2d 434, 91 S. Ct. 2199.

It is defendant's contention that this State's felony-murder statute warrants the conclusion that malice is an element of the crime and that an accidental homicide committed during one of the designated felonies will not invoke the felony-murder rule.[9] The third syllabus of *State ex rel. Peacher v. Sencindiver*, ____ W.Va. ____, 233 S.E.2d 425 (1977), is cited as supporting this point:

> "*W. Va. Code* 61-2-1 does not violate the due process clause of our federal and state constitutions. It requires the State to prove, in order to sustain a first degree murder conviction in a felony-murder case, that defendant committed or attempted to commit the named felony and that he committed murder incidental thereto."

*Peacher* dealt with the question of whether the felony-murder rule created an impermissible presumption in the proof of an element of the crime of felony-murder, in light of *Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508, 95 S.Ct. 1881 (1975), and *State v. Pendry*, ____ W.Va. ____, 227 S.E.2d 210 (1976). In *Peacher* we stated:

---

[9] Defendant urges that other courts have created certain limitations on the felony-murder rule, and that as a consequence we would be warranted in requiring that the shooting be other than accidental in order to invoke the first degree penalty. Most of the limitations have been centered on designating the type of felony that is necessary to invoke the felony-murder rule. LaFave & Scott, *Handbook on Criminal Law* 547-48 (1972). Our statute contains such a limitation since it is confined to four enumerated felonies. The Redline limitation cited by defendant, arising from the case of *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958), which excludes the felony-murder rule where a co-felon is killed by an interceding policeman and the surviving felon is charged with murder, is not applicable under the facts of this case. Another question frequently raised is whether the homicide occurred during the commission of the designated felony. *State v. Dawson*, 129 W. Va. 279, 40 S.E.2d 306 (1946); *Haskell v. Commonwealth*, 243 S.E.2d 477 (Va. 1978); 40 Am. Jur. 2d *Homicide* § 73. *See* Annot., 58 A.L.R.3d 851. No such factual situation is present in this case.

"In *State v. Williams*, 98 W. Va. 458, 127 S.E. 320 (1925), we held that a conviction for first degree murder, when the murder occurred during the commission of a robbery, may be had without proof of previous intent to kill, and without showing deliberation, willfulness, or premeditation. We decided that the trial court did not err when it refused to instruct the jury that the State has the burden of proving malice. *See also, Ford v. Coiner*, W. Va., 196 S.E.2d 91 (1972); *State v. Lewis*, 133 W. Va. 584, 57 S.E.2d 513 (1949); and *State v. Beale*, 104 W. Va. 617, 141 S.E. 7 (1927). In *State v. Bragg*, 140 W. Va. 585, 600, 87 S.E.2d 689, 699 (1955), the Court examined the three statutory definitions of first degree murder. '... [T]his case was prosecuted on the theory that the defendant shot and killed Gullett in the commission of a robbery, [and] the question whether the killing was a "wilful, deliberate and premeditated" killing under Code 61-2-1, does not enter into this case.' " [233 S.E.2d at 426]

Several cases from other jurisdictions were cited in *Peacher* and the following statement was made:

"In none of these cases, however, did a court hold that application of the felony-murder rule denied a defendant due process. *See State v. Goodseal*, 220 Kan. 487, 553 P.2d 279 (1976); *State v. Swift*, 290 N.C. 383, 226 S.E.2d 652 (1976); and *Warren v. State*, 29 Md.App. 560, 350 A.2d 173 (Ct.Spec.App. 1976). In *Warren*, the court observed that felony-murder statutes are not remotely affected by anything in *Mullaney v. Wilbur*." [233 S.E.2d at 426-27]

In each of these cases cited by *Peacher* the courts found that the felony-murder crime historically did not require malice, premeditation or deliberate intent to kill as an element of proof. Therefore, the *Mullaney* rationale, that the State could not by way of a presumption avoid proving an essential element of the crime, did not apply. Thus, in *Warren v. State*, 29 Md. App. 560, 350 A.2d 173 (1976), the court states:

"That reasoning was equally applicable to the common law felony-murder rule which requires no intent to kill or injure.

" 'Even without an intent to kill or injure, or an act done in wanton and wilful disregard of the obvious likelihood of causing such harm, homicide is murder if it falls within the scope of the felony-murder rule. The robber who kills the one he is attempting to rob is guilty of murder whether he intended any personal harm or not.' *Perkins on Criminal Law*, Ch. 2 at 37 (2nd ed.)." [29 Md. App. at 568, 350 A.2d at 179]

Other courts have reached the same result as those cases cited by *Peacher*. In *State v. Nowlin*, 244 N.W.2d 596 (Iowa 1976), the court addressed the point as follows:

"The felony-murder statute does not relieve the State of the burden of proving essential elements of first-degree murder. The elements alleged by defendant to be essential are not essential. The statute defines a distinct offense punishable as first-degree murder which does not require the state of mind necessary for a separate category of first-degree murder." [244 N.W.2d at 605]

The district court in *Westberry v. Mullaney*, 406 F. Supp. 407 (D. Me. 1976), *aff'd sub nom. Westberry v. Murphy*, 535 F.2d 1333, *cert. denied sub nom. Westberry v. Oliver*, 429 U.S. 889, 50 L. Ed. 2d 172, 97 S.Ct. 245, analyzed the Maine felony-murder statute in the following fashion:

"The foregoing analysis of the legislative and judicial history of the Maine law of homicide establishes that Section 2651 incorporates the common-law offense of felony-murder as a distinct substantive crime. Intent to kill is not an element of this crime; it is enough that a killing is committed in the course of a robbery. *See State v. MacDonald*, 229 A.2d 321, 326 (1967); *State v. Rainey*, 149 Me. 92, 96-99, 99 A.2d 78 (1953); *State v. Priest*, 117 Me. 223, 231-32, 103 A. 359 (1918)." [406 F. Supp. at 416]

In *State v. Womble*, 292 N.C. 455, 233 S.E.2d 534 (1977), the court dealt with a statute similar to ours, and, after reviewing the common law history of the felony-murder rule, stated:

> "There is no requirement in the statutory definition of the crime that the State prove malice, premeditation or deliberation. Thus, the State is not relieved of the burden of proving malice, since malice is not an element of the crime." [292 N.C. at 459, 233 S.E.2d at 537]

Two salient facts emerge from the foregoing law. First, in those jurisdictions having felony-murder statutes similar to ours, the courts recognize that their statutes embody the common law concept of the crime of felony-murder. Second, the common law created this substantive crime so as not to include the element that the homicide has to be committed with malice or an intent to kill.

The defendant argues, however, that a literal reading of our statute would suggest that by the use of the term "murder" as the initial subject of the sentence setting out the categories of first degree murder, it was intended that the State must initially prove what amounts to a common law murder before it can invoke the felony-murder rule.[10] Stripping the statute of its other categories of first degree murder, the defendant presents the statute as follows:

> "Murder * * * in the commission of, or attempt to commit, arson, rape, robbery or burglary, is murder of the first degree." [*Code* 61-2-1]

He submits that this is a fair reading of the third syllabus of *Peacher*. From a purely grammatical standpoint, it would have been better usage to begin the independent clause defining the crime of felony-murder with the term "homicide." However this may be, we do not approach the question of what the statute means as if

---

[10] For a discussion of the common law concept of murder, see *State v. Starkey*, ___ W. Va. ___, 244 S.E.2d 219 (1978).

we were on a maiden voyage and were forced upon uncharted seas without compass or sextant.

The felony-murder rule was a part of our substantive criminal law long before this State was formed. No case, either from this Court or from the Virginia court, has ever broken from the historical common law precedent to suggest that proof of an intentional killing is an element of the felony-murder crime. This principle is not only settled in the Virginias, but exists uniformly in all other states which have similar statutes.

In the few cases where such argument, as here advanced, has been considered, it has been flatly rejected as violating the historical common law concepts of the crime of felony-murder. *People v. Wilson*, 1 Cal. 3d 431, 441-42, 82 Cal. Rptr. 494, 501, 462 P.2d 22, 29 (1969); *Commonwealth v. Yuknavich*, 448 Pa. 502, 295 A.2d 290, 292 (1972); *Warren v. State*, 29 Md. App. 560, 350 A.2d 173 (1976). in *Warren*, where the statute read: "All murder which shall be committed in the perpetration of, or attempt to perpetrate, any rape, sodomy, mayhem, robbery, burglary, kidnapping ... shall be murder in the first degree," the court stated:

> "Initially, we remind appellant that while the statutory rule in § 410 speaks of all 'murder' committed in the perpetration of a felony as being murder in the first degree, the common law felony-murder rule is that *homicide, a killing*, resulting from the perpetration (or attempted perpetration) of a felony is *murder. Perkins on Criminal Law*, Ch. 2 at 37, et seq. (2nd ed.). The enactment of the statute did not abrogate the common law rule but supplemented it by graduating the punishment according to the circumstances of the crime:
>
>> " 'At common law, a killing in the perpetration of a robbery was murder, regardless of intent. See Clark and Marshall, *Crimes* (4th ed.), sec. 245. As used in the statute, the 'common law sense is left unimpaired; the measure of punishment only is sought to be graduated according to the circumstances under which it was

committed.' *Davis v. State, supra* [39 Md. 355, 374].' *Stansbury v. State,* 218 Md. 255, 260, 146 A.2d 17, 20." [Emphasis in original] [29 Md. App. at 565-66, 350 A.2d at 177-78]

Confronted as we are with a statute which has been uniformly construed not to require malice, premeditation or deliberate intent to kill as a part of the felony-murder crime, and acknowledging that this is consistent with the historical common law concept of the crime, we are bound by the precept of *stare decisis.*[11]

Nothing stated in *Peacher* requires a contrary result. The use of the term "murder" in the statute, *W.Va. Code,* 61-2-1, and in the third syllabus of *Peacher* as it relates to the crime of felony-murder, means nothing more than it did at common law—a homicide.

The defendant's trial counsel competently advised him as to the guilty plea, as there could be no reasonable expectation under the settled principles of our law that an unintended homicide committed in the course of an attempted burglary would constitute a defense to first degree murder arising out of the felony-murder rule.[12]

For these reasons, we affirm the judgment of the Circuit Court of Brooke County.

*Affirmed.*

---

[11] Even if we were writing on a clean slate of statutory interpretation, with the historical common law precedent we would begin with the presumption stated in the twenty-seventh syllabus of *Coal & Coke Railway Co. v. Conley,* 67 W.Va. 129, 67 S.E. 613 (1910), which in material part reads:

"In determining the meaning of a statute, it will be presumed, in the absence of words therein, specifically indicating the contrary, that the Legislature did not intend to innovate upon, unsettle, disregard, alter or violate (1) the common law; . . ."

*See Merchants Bank and Trust Co. v. Peoples Bank,* 99 W.Va. 544, 566, 130 S.E. 142, 151 (1925); *Ruffner v. Broun,* 83 W.Va. 689, 698-99, 98 S.E. 872, 876 (1919); *Twentieth Street Bank v. Jacobs,* 74 W.Va. 525, 528, 82 S.E. 320, 321 (1914).

[12] It should be noted that under defendant's plea bargain, he was sentenced to life with a recommendation of mercy, which is the most reduced sentence a jury might have returned.