# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0055** (Kanawha County 18-F-352)

**Jayrionte Thomas,**
**Defendant Below, Petitioner**

**FILED**

**March 23, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jayrionte Thomas, by counsel Matthew A. Victor, appeals the Circuit Court of Kanawha County's December 23, 2019, sentencing order. Respondent the State of West Virginia, by counsel Andrea Nease Proper, filed a response to which petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 14, 2017, Petitioner Jayrionte Thomas, Marcus Young, and Diante Freeman saw Terrel Davenport ("the victim") outside of the West Side Market and Deli ("the market") in Charleston. The four men gestured to one another and exchanged words before petitioner, Mr. Young, and Mr. Freemen entered the market; the victim followed shortly thereafter. The men exchanged words inside the store, possibly related to gang activity or affiliation, and petitioner pulled out a revolver. Petitioner fired five bullets, hitting the victim, before running from the market. Surveillance video showed petitioner trying to shoot the victim while the victim was on the ground outside of the market. The victim was transported to the hospital but died as a result of his injuries the following day. Police interviewed multiple witnesses, including the market owner, and reviewed surveillance videos.

Petitioner was found in Michigan on December 27, 2017. Subsequent to his arrest, on January 22, 2018, petitioner's counsel filed an omnibus discovery motion, and on January 25, 2018, an additional attorney was appointed to represent petitioner. Counsel moved to exclude evidence of petitioner's flight and filed an extensive discovery motion requesting evidence held by the State. Petitioner and Mr. Young were indicted on one count of conspiracy to manufacture, deliver, and possession with intent to manufacture and deliver a controlled substance (Fentanyl)

1

in violation of West Virginia Code §§ 60A-4-414 and -415; one count of manufacturing, delivering, and possession with intent to manufacture a controlled substance (Fentanyl) in violation of West Virginia Code § 60A-4-415; and one count of murder by use of a firearm in violation of West Virginia Code § 61-2-1. On August 28, 2018, the circuit court reconsidered its prior order severing the trial of the two defendants, reversing the ruling and ordering that both defendants be tried together.

In October of 2018, petitioner moved for appointment of an expert witness on ballistics, moved to sever the drug charges from the murder charge, moved to suppress photograph and in-court identifications from two witnesses, and moved to suppress the fact that petitioner is from Detroit. Petitioner also moved to continue the trial, and that motion was granted. In March of 2019, counsel served notice of an affirmative defense, self-defense. At that time, he renewed his motion to suppress the photographic identification and the motion to suppress evidence of fleeing. He also moved to sever his trial from Mr. Young's, asserting that the State planned to use "the jail house snitch's statement against the co-defendant."

The State made a plea offer to petitioner whereby he would plead guilty to first-degree murder and testify against Mr. Young in exchange for the dismissal of the drug charges. Further, the State agreed to make a recommendation of mercy. Petitioner accepted the offer and pled guilty to first-degree murder with the use of a firearm on October 29, 2019. During the plea colloquy, petitioner confirmed his understanding that the circuit court did not have to accept the State's recommendation of mercy and that the court could sentence him to life in prison without the possibility of parole. Petitioner also signed and initialed a lengthy list of rights he was waiving by pleading guilty. In accordance with that plea agreement, petitioner gave a recorded statement to Detective Bradford of the Charleston Police Department. In that statement, petitioner said that the victim entered the market and confronted petitioner and Mr. Young. Mr. Young called the victim a "bub", which angered him. According to petitioner, the victim was walking around with "his hands in his pants . . . [l]ike he was reachin' for something' or whatever . . . . [B]efore he got the chance to even pull out or whatever he had or even if he had anything you know what I mean I shot." Petitioner admitted that he shot at the victim five times but did not know how many times he hit the victim. After reviewing the surveillance video, petitioner admitted that he aimed his gun at the victim outside of the store and tried to shoot him again, but he was out of bullets. Mr. Young then shot the victim. According to the State, one of the bullets recovered from the victim's body matched Mr. Young's gun while one bullet removed at the hospital matched petitioner's gun. However, the other bullets were too fragmented to match a gun.

Petitioner also stated that he came to West Virginia to sell drugs with Mr. Young. He told the court that he left school in tenth grade and takes Prozac for depression. During the sentencing hearing, petitioner's counsel stated that petitioner was just eighteen years old at the time of the crime, he had a troubled upbringing, he had fifteen siblings, and he had been involved in the juvenile system. Counsel requested mercy for petitioner, telling the circuit court that petitioner had suffered greatly in jail as a result of his choice to plead guilty and testify against Mr. Young, a known gang member. Petitioner apologized to the court and to the victim's family, and the State recommended mercy as set forth in the plea agreement. However, the victim's mother gave a victim impact statement requesting that petitioner not be shown mercy in sentencing. By order

2

entered on December 23, 2019, petitioner was sentenced to life incarceration without the possibility of parole, with credit for time served.[1] Petitioner appeals from that order.

As we have previously stated,

> "'[t]he Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)." Syllabus Point 2, *State v. Georgius*, 225 W. Va. 716, 696 S.E.2d 18 (2010).

Syl. Pt. 1, *State v. Varlas*, -- W. Va. --, 844 S.E.2d 688 (2020).

On appeal, petitioner contends that he received multifaceted ineffective assistance of counsel necessitating the setting aside of the plea agreement. While petitioner readily acknowledges this Court's oft-repeated holding that "claims of ineffective assistance of counsel are not properly raised on direct appeal," *City of Philippi v. Weaver*, 208 W. Va. 346, 351, 540 S.E.2d 563, 568 (2000), he asserts that this case is one of the few where the record is complete and conclusively demonstrative of ineffective assistance of trial counsel. Petitioner avers that in all of this Court's decisions, the guiding principle for an appeal from a criminal conviction based on a guilty plea is the voluntariness of the guilty plea or the legality of the sentence. He contends that, on direct appeal, the controlling test as to the voluntariness of a plea is the competency of the advice given to a criminal defendant by his counsel. According to petitioner, his trial counsel misinterpreted first- and second-degree murder principles as they applied to the facts of this case; counsel also misapplied them to the present facts. Petitioner contends that his trial counsel disregarded petitioner's persistent claims of self-defense, which were supported by the following objective facts: the victim initiating the hostile exchange outside the market; the victim following petitioner inside the market; the victim arguing with petitioner and Mr. Young inside the market; and the victim keeping his hand in his clothes and reaching in his clothes for what petitioner could have easily perceived as a deadly weapon. Petitioner asserts that his trial counsel encouraged him to enter into the "disastrous plea." Without citing any authority, he further argues that "[r]ecommending without safeguards or reservations a plea to the ultimate penalty in West Virginia jurisprudence – life in prison without mercy – is ineffective assistance of counsel per se."

Petitioner argues that the facts "strongly suggested the self-defense defense" because he and his friends were "minding their own business, without bothering anyone" until they were confronted by the victim outside the market. He argues that because a criminal defendant, who was not the aggressor, with reasonable grounds to believe he was in imminent danger of death or serious bodily injury has the right to employ deadly force in self-defense, the criminal defendant's state of mind is crucial to his decision to employ deadly force in self-defense. *See State v. Beegle*, 188 W. Va. 681, 425 S.E.2d 823 (1992). Petitioner argues that he was justified in using deadly force in self-defense. He also asserts that he was not properly advised on the applicability of self-defense and that trial counsel abandoned that line of defense by not proceeding to trial with that

---

[1] Mr. Young went to trial, and the jury convicted him of first-degree murder. He appeals that conviction and his resulting sentence in Case No. 20-0050.

"viable defense." He contends that "[h]aving failed to develop the very viable defense, counsel's overall performance in that regard was deficient and the abandonment of the self-defense theory constituted ineffective assistance of counsel." He further argues that his plea was "induced by the advice he received from his counsel concerning the [p]rincipal in the [s]econd [d]egree . . . ."

Despite the fact that petitioner was the first one to shoot the victim, unloading every bullet in the gun and continuing to try to shoot at the victim once he was on the ground, petitioner argues there was no evidence to suggest that petitioner was the killer. Without citing to the record, petitioner claims that he had no prior knowledge of Mr. Young's intent to kill the victim. He also asserts, without citing to the record, that undisputed facts existed from the inception of the prosecution that Mr. Young fired the lethal shot to the victim's head. Petitioner argues that counsel foisted the plea upon him based upon a theory that had no application to the facts of the case, particularly because it was based on counsel's misinterpretation and misreading of the underlying facts. He contends that the circuit court erred in accepting the plea because "it was obvious that [p]etitioner was not the principal in any degree but rather an individual who used a deadly force in self-defense."

At the outset, we note that this Court considers claims of ineffective assistance of counsel as follows:

> "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus point 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

Syl. Pt. 2, *Meadows v. Mutter*, 243 W. Va. 211, 842 S.E.2d 764 (2020). However, this Court has also repeatedly found

> [i]t is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

Syl. Pt. 10, *State v. Triplett*, 187 W. Va. 760, 421 S.E.2d 511 (1992). We have further explained that "the preferred way of raising ineffective assistance of . . . counsel is to file a subsequent petition for a writ of habeas corpus raising the issue in the court below." *Watts v. Ballard*, 238 W. Va. 730, 735-36 n.7, 798 S.E.2d 856, 861-62 n.7 (2017) (internal quotations and citation omitted).

In addition, in cases involving guilty pleas "the prejudice requirement of the two-part test established by *Strickland* . . . and [*Miller*], demands that a habeas petitioner show that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Syl. Pt. 6, in part, *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999). We have previously held

> [t]he controlling test as to the voluntariness of a guilty plea, when it is attacked either on a direct appeal or in a habeas corpus proceeding on grounds that fall within those on which counsel might reasonably be expected to advise, is the competency of the advice given by counsel.

Syl. Pt. 2, *State v. Sims*, 162 W. Va. 212, 248 S.E.2d 834 (1978). Further,

> [b]efore a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by this error.

*Id.* at 212, 248 S.E.2d at 835, Syl. Pt. 3.

Here, petitioner fails to cite to the record for several of his key factual contentions. He also neglects his duty to cite authority for his contention that recommending a plea deal that could result in life imprisonment without a binding sentence was per se ineffective assistance of counsel. Both of these errors violate Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure.[2] In addition, we do not believe there is sufficient information contained in the record at this juncture to determine whether petitioner received effective assistance of counsel. Therefore, we decline to address the merits of petitioner's ineffective assistance of counsel claim.

Petitioner's second assignment of error is that the circuit court erred in accepting petitioner's plea of guilty to first-degree murder in the absence of a factual basis as to the elements of first-degree murder. Because there was no objection to petitioner's plea before the circuit court, petitioner concedes that this alleged error must be considered under this Court's plain error jurisprudence. In support of his argument, he contends that a first-degree murder conviction required the State to demonstrate the existence of complex mental processes that led petitioner to deliberate and premeditate acts of killing another individual. Without citing to the record, petitioner argues that the record showed the "marked absence, in [p]etitioner's admission, of any deliberate or premeditated acts. Instead, the record indicated [p]etitioner's assertion of fear of [the

---

[2] Rule 10(c)(7) provides as follows:

The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

victim] which triggered the claim of self-defense." He argues that "[n]othing in the [State's] and defense counsel's recitations [of the facts] removed, from the 'perfect guilty plea' the taint created by [p]etitioner's assertion of an affirmative defense, i.e. that of the self-defense." After hearing the representations of counsel, the circuit court asked whether petitioner still wished to plead guilty, and petitioner responded in the affirmative. Petitioner contends that the circuit court never heard evidence of petitioner's premeditation or deliberation that could lead to an admission to any deliberate killing of another person or his nefarious mental processes leading to the premeditated murderous act. Without citing legal authority, petitioner asserts that his plea was unintelligent and involuntary, which affected his substantive and substantial rights by giving up "a plethora of constitutional rights, including the cherished right to trial by jury . . . ."

"To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). In *Miller*, we held that "[h]istorically, the 'plain error' doctrine 'authorizes [an appellate court] to correct only 'particularly egregious errors' . . . that 'seriously affect the fairness, integrity or public reputation of judicial proceedings[.]'"" *Id.* at 18, 459 S.E.2d at 129. During the plea colloquy in this matter, when the circuit court asked petitioner what he did "to be guilty of" first-degree murder, he responded, "I shot and killed Terrell – Terrell Davenport." Both the State and petitioner's trial counsel addressed the possibility of petitioner's assertion of self-defense, stating that while the victim's hands were around his pants, there was no gun seen on the victim's person. His counsel also told the circuit court that if the altercation had ended inside he believed that manslaughter would have been more appropriate but that they "funnel[ed] outside the building later on, the [victim was] lying there; [petitioner] comes out – [petitioner] has already made a statement that he went to shoot outside and he couldn't, that there were no bullets." Counsel also represented to the circuit court that he had discussed all of that with his client "[i]n depth" and petitioner agreed that he understood "all of that." After making all of the necessary findings, the circuit court accepted petitioner's plea. Based on the record before this Court, we cannot find that the circuit court committed plain error in accepting that plea. For these reasons, we affirm the circuit court's December 23, 2019, sentencing order.

Affirmed.

**ISSUED:** March 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6