IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

**FILED**

**April 26, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-0915

JASMAN MONTGOMERY,
Plaintiff Below, Petitioner

v.

DONNIE AMES, SUPERINTENDENT
MT. OLIVE CORRECTIONAL COMPLEX,
Defendant Below, Respondent

Appeal from the Circuit Court of Mercer County
The Honorable Mark Wills, Judge
Civil Action No. 14-C-463

AFFIRMED

Submitted:  January 8, 2019
Filed:  April 26, 2019

Joseph T. Harvey, Esq.
Bluefield, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Lindsay S. See, Esq.
Solicitor General
Gordon L. Mowen, II, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong[ed] standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines,* 219 W. Va. 417, 633 S.E.2d 771 (2006).

2. "On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2*, Perdue v. Coiner,* 156 W. Va. 467, 194 S.E.2d 657 (1973).

3. A criminal prosecution requires the existence of an accusation charging the commission of an offense. Such an accusation, either in the form of an indictment or an information, is an essential requisite of a circuit court's jurisdiction.

4. A petitioner seeking post-conviction habeas corpus relief may successfully challenge a guilty-plea conviction based upon an alleged violation of Rule 7 of the West Virginia Rules of Criminal Procedure only by establishing that the violation amounted to a constitutional or jurisdictional error, or by showing that the alleged error

i

resulted in a complete miscarriage of justice. In addition, the petitioner must also demonstrate that he was prejudiced by the alleged error.

5.     "A constitutional issue that was not properly preserved at the trial court level may, in the discretion of this Court, be addressed on appeal when the constitutional issue is the controlling issue in the resolution of the case." Syl. Pt. 2, *Louk v. Cormier*, 218 W. Va. 81, 622 S.E.2d 788 (2005).

6.     "'A defendant has a right under the Grand Jury Clause of Section 4 of Article III of the West Virginia Constitution to be tried only on felony offenses for which a grand jury has returned an indictment.' Syl. Pt. 1, *State v. Adams,* 193 W. Va. 277, 456 S.E.2d 4 (1995)." Syl. Pt. 1, *State v. Haines*, 221 W. Va. 235, 654 S.E.2d 359 (2007).

7.     A defendant may waive his constitutional right to a grand jury indictment as provided in article III, section 4 of the West Virginia Constitution and elect to be prosecuted by information in accordance with the provisions of Rule 7 of the West Virginia Rules of Criminal Procedure if such waiver is made intelligently and voluntarily.

8.     "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's

performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, *State v. Miller,* 194 W. Va. 3, 459 S.E.2d 114 (1995).

9.      "In cases involving a criminal conviction based upon a guilty plea, the prejudice requirement of the two-part test established by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller,* 194 W. Va. 3, 459 S.E.2d 114 (1995), demands that a habeas petitioner show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Syl. Pt. 6, *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999).

WORKMAN, Justice:

In 2011, Petitioner Jasman Montgomery waived his constitutional right to grand jury indictment and pled guilty by information to the first-degree murder of seventeen-year-old Matthew Flack. He received substantial benefits for proceeding in this manner including parole eligibility after serving fifteen years in the penitentiary.

In 2016, Petitioner filed a second amended petition for writ of habeas corpus in the Circuit Court of Mercer County, West Virginia, which was denied. On appeal to this Court, Petitioner contended that his guilty plea by information was illegal and improper under the West Virginia Constitution and Rule 7 of the West Virginia Rules of Criminal Procedure (hereinafter "Rule 7"), because he faced a life sentence. Petitioner also asserted his guilty plea was involuntary and his trial counsel provided ineffective assistance when they allowed him to plead guilty before receipt of the ballistics report that revealed Petitioner's weapon did not fire the fatal shot.

We affirm the circuit court's decision. Even though the guilty plea by information did not comport with Rule 7, Petitioner implicitly waived that irregularity when he expressly waived his constitutional right to an indictment. Moreover, the detail of who actually fired the shot that killed the victim was legally immaterial to the issues of the voluntariness of Petitioner's guilty plea and the effectiveness of his counsel

1

considering the homicide occurred when Petitioner and his co-conspirators perpetrated a violent home invasion.

## I.  FACTS AND PROCEDURAL HISTORY

On the evening of January 28, 2011, Petitioner, along with Brandon Flack and Jacob Thomas, planned to commit a robbery. Petitioner and his co-conspirators traveled from Pulaski, Virginia, and drove to Bluefield, West Virginia, with the intent to steal money from a car. Upon their arrival shortly after midnight on January 29, 2011, they could not locate the car. Petitioner and his co-conspirators changed plans and decided to break into the home of David Flack (Brandon Flack's uncle) and steal money. They donned ski masks, approached the back of the Flack residence, and knocked on the door.

Matthew Flack (Brandon Flack's cousin) and others were inside the home. Hearing the knock on the back door, Matthew looked through a curtain and saw three masked men standing at the back door. Matthew then ran upstairs to get a gun. As Matthew headed up the stairs, one of Petitioner's co-conspirators kicked in the back door and they entered the home. Petitioner and Jacob Thomas were armed with handguns. Brandon claimed, and the State did not contest, that he was unarmed. Following Matthew, Brandon ran up the stairs and the two began wrestling. Brandon and Matthew fought on the landing, and Brandon was shot in the scuffle. Petitioner ran up the stairs, pulled out a gun, and shot toward Matthew.

2

Matthew died as the result of gunshot wounds of his face and chest. The medical examiner found the wounds "could be the result of one discharge fired by a handgun." A bullet was recovered from Matthew's body and sent for ballistic testing. As explained below, Petitioner believed he shot Matthew in the face (and testified in court that he did) but the ballistics report later revealed that Petitioner's weapon did not fire the fatal shot.[1]

Following negotiations, Petitioner agreed to plead guilty to first-degree murder by way of information in October 2011.[2] At the time of the plea, the ballistic report was not complete. The plea agreement provided:

> 1. That the State will file an Information charging Defendant Montgomery with the first degree murder of Matthew Flack on or about the 29th day of January 2011, and Defendant will tender a guilty [plea] to said Information.
>
> 2. That the State will refrain from further prosecuting Defendant for other possible charges arising from the same set of facts and circumstances surrounding the murder of Matthew Flack, which charges are now known or should be known to the State.

---

[1] The parties do not indicate who fired the shot that killed Matthew, but that detail is irrelevant to our analysis.

[2] The State pursued the murder charge based on a felony murder theory. Felony murder is defined as "[m]urder . . . in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance[.]" W. Va. Code § 61-2-1 (2014). The penalty for felony murder is "confinement in the penitentiary for life." *Id.*, § 61-2-2.

3. That the State and Defendant agree, pursuant to Rule 11(e)(C) of the Rules of Criminal Procedure, that the proper disposition of the case herein is a life sentence with a grant of mercy.

4. The Defendant will come forward and provide truthful testimony about the facts and circumstances regarding the murder of Matthew Flack in any court proceeding. The State will join Defendant's motion for an order requiring the Division of Corrections to house him separately from any codefendant.

Petitioner agreed to the above terms and, in exchange, waived several constitutional rights including the right to be prosecuted by indictment and the right to a jury trial. Although not outlined in the plea agreement, Petitioner also received the benefit of the State's agreement to file a motion with the circuit court to strike the language "with the use of a firearm" from the information to avoid a firearm enhancement penalty against Petitioner. The circuit court granted this motion.

At the plea hearing on October 17, 2011, Petitioner asserted, under oath, that he was entering the plea knowingly, voluntarily, and of his own free will; that no one had forced or threatened him to do so; that his counsel informed him of the charges and consequences of pleading guilty; and that he was satisfied with the advice and services of his counsel. Petitioner also stated that he had reviewed and understood the waiver of his right to an indictment, and indicated that he wanted to proceed, knowing he was waiving or giving up this right. Further, Petitioner signed a Waiver of Indictment in open court and consented to proceeding by way of information. Counsel informed the court during

the guilty plea that "[b]allistic results aren't back yet, but [Petitioner] has sufficient information at length to enter in this plea voluntarily, and he—we went over his rights with him yesterday." Petitioner agreed.

The circuit court agreed to accept the binding plea agreement, and on November 28, 2011, sentenced Petitioner to life in prison, with the recommendation of mercy, whereby Petitioner would be eligible for parole after having served fifteen years. *See* W. Va. R. Crim. P. 11(e) (stating court may accept or reject binding plea agreement).

Pursuant to the plea, Petitioner testified for the State at co-defendant Brandon Flack's trial. Petitioner discussed how the men planned the robbery, traveled to the Flack residence, and executed a forced entry. *State v. Flack*, 232 W. Va. 708, 711, 753 S.E.2d 761, 764 (2013). Petitioner stated that he shot Matthew Flack. *Id.* During cross-examination by defense counsel, Petitioner admitted that he was motivated to plead guilty before his co-defendants could because he did not want to go to the penitentiary for the rest of his life without the possibility of parole.

> [Flack's Defense Counsel] Q. They also told you, the first guy who gets the plea gets the deal, didn't they? That's what you came to understand, the first guy that takes a plea gets the deal?
>
> [Petitioner] A. Yeah.
>
> Q. And you had to make yourself the best deal you could, in the situation . . . . And that's what you did, isn't it?
>
> A. Yes, sir.

5

A jury found Brandon Flack guilty of all charges set forth in the indictment: first-degree murder, burglary, first-degree robbery, and conspiracy. Because the State had pursued the murder charge based on a felony murder theory, the trial court merged the counts of first-degree murder and burglary, resulting in the dismissal of the burglary conviction. Mr. Flack was sentenced to life imprisonment with eligibility for parole after fifteen years for first-degree murder, a determinate term of forty years for first-degree robbery, and an indeterminate term of one to five years on the conspiracy offense. The trial court ordered all those sentences to run consecutively. *Id.* at 712, 753 S.E.2d at 765.[3]

Petitioner filed a petition for habeas corpus in August 2014. Petitioner was appointed counsel and subsequently filed an amended petition in October 2014, wherein he raised four claims: (1) the guilty plea to first-degree murder by information was improper pursuant to Rule 7; (2) his guilty plea was involuntary; (3) ineffective assistance of counsel, and (4) excessive bail. Petitioner ultimately withdrew this amended petition.

In March 2016, Petitioner filed a second amended petition and alleged that pleading guilty to first-degree murder by information was illegal and improper because it is an offense punishable by life imprisonment. Petitioner relied upon Rule 7, which

---

[3] In the appeal of Brandon Flack's habeas corpus petition, this Court stated: "robbery is not a lesser included offense of felony murder predicated on burglary. Therefore, double jeopardy does not prohibit the imposition of a punishment for both crimes." *Flack v. Ballard*, 239 W. Va. 566, 587, 803 S.E.2d 536, 557 (2017).

provides: "[a]n offense which may be punished by life imprisonment shall be prosecuted by indictment. Any other felony offense may be prosecuted by information if the indictment is waived."[4] *Id.*, in part.

Petitioner also argued that his trial counsel was ineffective because they allowed him to plead guilty by information, and counsel advised him to plead guilty even though the ballistics report was not completed. Petitioner stated that the ballistics report ultimately revealed that the bullet removed from the victim was *not* fired by Petitioner's handgun. Petitioner also noted that the Post-Mortem Investigation confirmed that the victim died of two gunshot wounds that were inflicted by the same bullet.

With regard to relief, Petitioner requested that the circuit court consider placing him on probation or home confinement. In the alternative, Petitioner requested that his counsel be allowed to negotiate a more reasonable plea agreement with the State or proceed to trial if necessary.

The State[5] responded that although the charging document was not in accordance with Rule 7, the fact that Petitioner waived grand jury indictment and elected

---

[4] Petitioner also contended that the Grand Jury Clause of the Fifth Amendment to the United States Constitution was violated. He has since abandoned that claim.

[5] We refer to Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex, as "the State."

7

to plead by way of information was, at most, harmless error. A proper charging document would not have resulted in any change in the outcome, namely, a conviction of first-degree murder with the possibility of parole. The State also asserted that Petitioner received effective assistance of counsel; the issue of whose bullet killed the victim was immaterial under a felony murder charge in a case where several co-defendants broke into a home at night and the victim was shot to death.[6]

The circuit court held an omnibus evidentiary hearing on July 26, 2016. Petitioner did not testify nor did he offer evidence. The circuit court heard argument by counsel.

By order entered August 30, 2016, the circuit court denied Petitioner's second amended petition. It held that although Petitioner's guilty plea by information was not in accordance with the West Virginia Rules of Criminal Procedure, this alleged Rule 7 "right" to a grand jury presentment of first-degree murder "is not one borne of the [State] Constitution." The circuit court noted that it was unaware of any legal authority to support the notion that this procedural irregularity necessitated relief in habeas corpus. *See e.g., State ex rel. Farmer v. Trent*, 209 W. Va. 789, 794, 551 S.E.2d 711, 716 (2001) (stating prisoner may not collaterally attack guilty plea where all that is shown is failure

---

[6] *See* Syl. Pt. 7, *State v. Sims*, 162 W. Va. 212, 248 S.E.2d 834 (1978) ("The crime of felony-murder in this State does not require proof of the elements of malice, premeditation or specific intent to kill. It is deemed sufficient if the homicide occurs accidentally during the commission of, or the attempt to commit, one of the enumerated felonies.").

to comply with formal requirements of Rule 11 of West Virginia Rules of Criminal Procedure).

The circuit court also held that Petitioner failed to prove that his trial counsel was ineffective. It noted that given the circumstances of the case, the plea deal accepted by Petitioner and the resulting sentence was in his best interest. Finally, the lengthy plea colloquy demonstrated that Petitioner was fully informed about the consequences of the plea agreement and his decision to plead guilty was voluntary.

## II.  STANDARD OF REVIEW

This Court reviews a circuit court's dismissal of a habeas petition under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong[ed] standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines,* 219 W. Va. 417, 633 S.E.2d 771 (2006). Further, "[o]n an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, *Perdue v. Coiner,* 156 W. Va. 467, 194 S.E.2d 657 (1973).

9

### III. DISCUSSION

#### A. Petitioner Waived His Right To An Indictment

Petitioner first contends that the circuit court erred by rejecting his claim that pleading guilty to first-degree murder by information was illegal and improper. Petitioner argues that the circuit court "erroneously assumed that the requirement of an indictment in cases that may be subject to life imprisonment stemmed" from Rule 7. Petitioner's assertion is disingenuous. The circuit court focused on the Rule 7 violation because that was the precise argument advanced by Petitioner.

The issue is whether a defendant, who has waived his constitutional right to grand jury indictment and pled guilty by information, is entitled to post-conviction habeas corpus relief by simply showing his plea did not comply with the requirements of Rule 7. We begin with Rule 7, which provides the procedure for a defendant to waive grand jury indictment:

> (a) *Use of Indictment or Information*. – An offense which may be punished by life imprisonment shall be prosecuted by indictment. Any other felony offense may be prosecuted by information if the indictment is waived. Any misdemeanor may be prosecuted by indictment or information. An information may be filed without leave of court.
>
> (b) *Waiver of Indictment*. – Any felony offense which is not punishable by life imprisonment may be prosecuted by information if the defendant, after having been advised of the nature of the charge and of his or her rights by a written waiver signed by the defendant and his or her counsel and filed as a part of the record, waives prosecution by indictment.

W. Va. R. Crim. P. 7, in part.

An information is an agreement between the State and the defendant to proceed without the formalities of a grand jury indictment. In certain situations, the defendant and the State benefit by proceeding by way of information. By waiving the constitutional right to an indictment, "the defendant can obtain a speedier disposition of the charges against him and the State is spared the time and expenses of unnecessary Grand Jury proceedings." *People v. Menchetti*, 561 N.E.2d 536, 538 (N.Y. 1990).[7]

Petitioner relies on *State ex rel. McGilton v. Adams*, 143 W. Va. 325, 102 S.E.2d 145 (1958), and *State ex rel. Firestone v. Adams*, 145 W. Va. 194, 113 S.E.2d 830 (1960), for the proposition that his conviction is utterly void in the absence of an indictment considering the Rule 7 irregularity. However, these cases are patently distinguishable as they involved the transfer of adjudicated delinquents to an adult penitentiary when there was *no* charging instrument—information or indictment—and no

---

[7] *See also* Fed. R. Crim. P. 7 comments (noting the "[o]pportunity to waive indictment and to consent to prosecution by information will be a substantial aid to defendants, especially those who, because of inability to give bail, are incarcerated pending action of the grand jury, but desire to plead guilty. This rule is particularly important in those districts in which considerable intervals occur between sessions of the grand jury. In many districts where the grand jury meets infrequently a defendant unable to give bail and desiring to plead guilty is compelled to spend many days, and sometimes many weeks, and even months, in jail before he can begin the service of his sentence, whatever it may be, awaiting the action of a grand jury.").

11

conviction.[8] Moreover, *McGilton* and *Firestone* were decided before this Court adopted the West Virginia Rules of Criminal Procedure in 1981—"the paramount authority controlling criminal proceedings before the circuit courts of this jurisdiction[.]" *State v. Wallace*, 205 W. Va. 155, 156, 517 S.E.2d 20, 21 (1999). In *Wallace*, this Court recognized that "Rule 7(c)(1) of the West Virginia Rules of Criminal Procedure now requires only that '[t]he indictment *or the information* shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.'" *Id.* at 159, 517 S.E.2d at 24 (emphasis added).

Consequently, Petitioner's related argument—that the circuit court lacked jurisdiction to accept the plea because there was no indictment—lacks merit. Petitioner offers no support for that categorical argument, and we are aware of none. Rule 7 clearly provides that a criminal defendant may be charged by indictment *or* information. Other courts examining this issue have found that the constitutional right to be charged by a

---

[8] In *McGilton*, this Court granted relief in habeas corpus recognizing that "a juvenile court is without authority to sentence a person to confinement in the penitentiary of this State." *Id.* at 325, 102 S.E.2d at 145, syl. pt. 1, in part. Moreover, we held that "[t]he incarceration of a person in the penitentiary of this State for an offense for which there was no presentment or indictment by a grand jury violates the provisions of Article III, Section 4, of the Constitution of this State and is therefore void." *Id.*, syl. pt. 2; *see also Firestone*, 145 W. Va. at 195-96, 113 S.E.2d at 831 (granting relief in habeas corpus when petitioner (adjudicated delinquent) was determined unfit for confinement in Industrial School for Boys and subsequently transferred to State Penitentiary at Moundsville, without being indicted by grand jury). The syllabus points of *McGilton* and *Firestone* are valid points of law considering the distinctive facts of those cases. This Court has repeatedly stated that a syllabus point is to be read in the light of the opinion. *Farley v. Worley*, 215 W. Va. 412, 426, 599 S.E.2d 835, 849 (2004).

12

grand jury is a personal right of the defendant and does not go to the court's subject matter jurisdiction because it may be waived. *See, e.g., Malone v. Com.*, 30 S.W.3d 180, 184 (Ky. 2000) ("Provisions to the effect that no person shall be held or required to answer, or held for or put upon trial, for a criminal offense, or for a specified kind or grade of offense, except by or upon indictment have been construed, in most jurisdictions as not being mandatory or jurisdictional in character but merely conferring a personal privilege which may be waived.").[9]

Nevertheless, we are mindful that an information acts in lieu of or as a substitute for an indictment and its validity is therefore essential to a circuit court's jurisdiction. It is axiomatic that a criminal prosecution requires the existence of an accusation charging the commission of an offense. Such an accusation, either in the form of an indictment or an information, is an essential requisite of a circuit court's jurisdiction. *See, e.g., Malone*, 30 S.W.3d at 183 ("In Kentucky, subject matter jurisdiction over a felony offense may be invoked either by a grand jury indictment or by information in cases where the individual consents."); *accord Wells v. Sacks*, 184 N.E.2d

---

[9] *See also McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001) (citing Rule 7(b) of Federal Rules of Criminal Procedure and finding "the constitutional right to be charged by grand jury indictment simply does not fit the mold of a jurisdictional defect, because it is a right that plainly may be waived."); *United States v. Jones*, 177 F.2d 476, 478 (7th Cir. 1949) ("The right to indictment by a grand jury is a right guaranteed by the Federal Constitution . . . but an intelligent accused may waive any constitutional right that is in the nature of a privilege to him, or that is for his personal protection or benefit.").

449 (Ohio 1962). Thus, if an accused has not validly waived his or her constitutional right to an indictment, an indictment is still the mandatory charging instrument.

Having obtained from the circuit court precisely what he sought, it ill behooves Petitioner now to complain that his waiver of indictment was improper under Rule 7 because he was charged by information with an offense punishable by life imprisonment. As this Court stated in *State v. Wade,* 174 W. Va. 381, 384, 327 S.E.2d 142, 146 (1985), Rule 7 "implements the requirements of" the constitutional right to grand jury indictment under article III, section 14 of the West Virginia Constitution. Rule 7 does not create a right separate and distinct from the constitution. Consequently, when Petitioner expressly waived his constitutional right to an indictment, he implicitly waived the Rule 7 irregularity.

In *Wallace*, we discussed the interplay between the constitutional mandate and Rule 7:

> Article III, § 14 of the West Virginia Constitution mandates, in part, that in all criminal trials "the accused shall be fully and plainly informed of the character and cause of the accusation." *Rule 7(c)(1) is coterminous with this constitutional command.* As we stated in Syllabus point 2 of *State v. Miller,* "[a]n indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations."

*Wallace*, 205 W. Va. at 160, 517 S.E.2d at 25 (footnotes omitted and emphasis added).

14

The requirements of Rule 7 serve a salutary purpose and should ordinarily be observed. Nevertheless, this Court has recognized that a technical violation of the West Virginia Rules of Criminal Procedure does not give rise to habeas relief. For instance, in *State ex rel. Vernatter v. Warden*, 207 W. Va. 11, 528 S.E.2d 207 (1999), the petitioner argued that he was denied due process as a result of the trial court failing to meet certain requirements of Rule 11 of the West Virginia Rules of Criminal Procedure in the course of his guilty plea colloquy. *Vernatter*, 207 W. Va. at 19, 528 S.E.2d at 215. In *Vernatter*, the trial court violated Rule 11 by failing to advise the petitioner that he was waiving a variety of constitutional protections, including the right to a trial and the right to confront accusers. This Court found the claims were not cognizable in an action for post-conviction relief under the West Virginia Post-Conviction Habeas Corpus Act:[10] "[t]he requirements of Rule 11, while they assist in ensuring that guilty pleas comport with this basic constitutional requirement, are not of themselves of constitutional significance." *Vernatter*, 207 W. Va. at 19-20, 528 S.E.2d at 215-16.

This Court went on to hold in *Vernatter* that a petitioner may successfully challenge a guilty-plea conviction in a habeas proceeding based upon an alleged violation of Rule 11 "only by establishing that the violation constituted a constitutional or jurisdictional error; or by showing that the error resulted in a complete miscarriage of justice, or in a proceeding inconsistent with the rudimentary demands of fair procedure."

---

[10] *See* W. Va. Code §§ 53-4A-1 to -11 (2016).

*Vernatter*, 207 W. Va. at 14, 528 S.E.2d at 210, syl. pt. 10, in part. In addition, the petitioner must also demonstrate that he was prejudiced by the alleged error. *Id*.; *accord State ex rel. Farmer v. Trent*, 209 W. Va. at 794, 551 S.E.2d at 716 (noting prisoner may not collaterally attack guilty plea under Rule 11 where all that is shown is failure to comply with formal requirements of Rule).

Applying the principles enunciated in *Vernatter* to the issue before us, we hereby hold that a petitioner seeking post-conviction habeas corpus relief may successfully challenge a guilty-plea conviction based upon an alleged violation of Rule 7 of the West Virginia Rules of Criminal Procedure only by establishing that the violation amounted to a constitutional or jurisdictional error, or by showing that the alleged error resulted in a complete miscarriage of justice. In addition, the petitioner must demonstrate that he was prejudiced by the alleged error.

In this case, all that Petitioner has alleged and shown is that the circuit court failed to comply with the formal requirements of Rule 7 when it accepted his guilty plea by information when the offense was punishable by life imprisonment. At no point in the proceedings below did Petitioner show that his guilty plea by information was involuntary or that he was prejudiced by this alleged error. To the contrary, Petitioner admitted at Brandon Flack's trial that he was strongly motivated to be the first of his co-defendants to accept the plea offer by the State to secure the best deal. The State's agreement to waive indictment and proceed to prosecution by information was therefore

16

substantially favorable to Petitioner and he has shown no prejudice. Accordingly, Petitioner's claimed Rule 7 violation is insufficient to warrant post-conviction habeas corpus relief.

Petitioner raises a new challenge on appeal, namely, that his right to a grand jury indictment under the State Constitution was violated. W. Va. Const. art. III **§** 4. Because Petitioner did not advance this constitutional argument below, we address whether to entertain it.

This Court has explicitly stated that, under very narrow circumstances, an error not properly preserved at the trial court level may be considered on appeal.[11] In syllabus point two of *Louk v. Cormier*, 218 W. Va. 81, 622 S.E.2d 788 (2005), we held:

---

[11] Justice Cleckley made the following observations regarding this Court's authority to address an issue that was not properly preserved at the circuit court level:

> [A]lthough the rule requiring all appellate issues be [properly] raised first in the circuit court is important, it is not immutable: Our cases have made clear that the failure to [properly] raise issues below is not a jurisdictional prerequisite to an appeal but, rather, is a gatekeeper provision rooted in the concept of judicial economy, fairness, expediency, respect, and practical wisdom. Requiring issues to be [properly] raised at the trial level is a juridical tool, embodying appellate respect for the circuit court's advantage and capability to adjudicate the rights of our citizens.

*State v. Greene*, 196 W. Va. 500, 505, 473 S.E.2d 921, 926 (1996) (Cleckley, J., concurring).

17

A constitutional issue that was not properly preserved at the trial court level may, in the discretion of this Court, be addressed on appeal when the constitutional issue is the controlling issue in the resolution of the case.

Applying this principle of law, we exercise our discretion to address the constitutional issue presented even though it was not properly preserved below. The issue raised here, but omitted below, is purely legal in nature and lends itself to resolution on the existing record. Moreover, the State has thoroughly briefed the constitutional issue in response to Petitioner's claim. We view the matter as sufficiently developed to decide this issue.

Article III, section 4 of the West Virginia Constitution mandates, in part, that "[n]o person shall be held to answer for treason, felony or other crime . . . unless on presentment or indictment of a grand jury." This Court held in syllabus point one of *State v. Haines*, 221 W. Va. 235, 654 S.E.2d 359 (2007), that:

> "A defendant has a right under the Grand Jury Clause of Section 4 of Article III of the West Virginia Constitution to be tried only on felony offenses for which a grand jury has returned an indictment." Syl. Pt. 1, *State v. Adams,* 193 W. Va. 277, 456 S.E.2d 4 (1995).

Nevertheless, just as an accused may waive his constitutional rights to assistance of counsel and trial by jury, [12] which are designed for the protection of his or

---

[12] *See* Syl. Pt. 5, *State ex rel. Powers v. Boles,* 149 W. Va. 6, 138 S.E.2d 159 (1964) ("A person accused of a crime may waive his constitutional right to assistance of (continued . . .)

18

her personal rights, an accused may waive the similar personal right of indictment by a grand jury. An accused may waive sundry constitutional rights and privileges, if he or she does so intelligently and voluntarily.[13] Indeed, a waiver of grand jury indictment is of less consequence than waiving the right to trial by jury considering the grand jury need find only probable cause to believe the accused committed the crime, rather than guilt beyond a reasonable doubt. *United States v. Montgomery,* 628 F.2d 414, 416 (5th Cir. 1980) (discussing constitutional waiver in context of Rule 7(b) of Federal Rules of Criminal Procedure that permits waiver of indictment and prosecution by information for non-capital felonies).

Accordingly, we hereby hold that a defendant may waive his constitutional right to a grand jury indictment as provided in article III, section 4 of the West Virginia Constitution and elect to be prosecuted by information in accordance with the provisions of Rule 7 of the West Virginia Rules of Criminal Procedure if such waiver is made intelligently and voluntarily. Based on the record before us, it is clear that Petitioner did so here when he explicitly waived this constitutional right and elected to be prosecuted by

---

counsel and his constitutional right to trial by jury [art. III § 14 of the West Virginia Constitution], if such waivers are made intelligently and understandingly.").

[13] Other significant rights conferred by the United States Constitution can be waived by criminal defendants. *See, e.g., Adams v. U.S. ex rel. McCann*, 317 U.S. 269 (1942) (trial by jury); *Johnson v. Zerbst*, 304 U.S. 458 (1938) (right of counsel); and *Trono v. U.S.*, 199 U.S. 521 (1905) (protection against double jeopardy).

information.[14] Petitioner's Waiver of Indictment was filed in open court after the circuit court had ascertained from Petitioner that he had received a copy of the information, was familiar with it, and agreed to proceed in this manner.

---

[14] At the plea hearing, the circuit court addressed Petitioner's constitutional waiver at length:

> THE COURT: Now, do you know and understand that you have a constitutional right to be indicted by the grand jury. Do you understand that?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: I'm going to need for you to speak up for me, and make sure you answer out loud all the questions that I ask you. Okay?
>
> THE DEFENDANT: All right.
>
> THE COURT: Now, let me explain what a grand jury is. A grand jury is made up of 16 citizens of this county, and they're brought in, and the prosecuting attorney presents what they believe the evidence would be against you. It takes at least 15 members of the grand jury to be present for there to be a quorum.
> After they hear the evidence, at least 12 members of the grand jury [have] to agree to have charges brought against you. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And the standard they use is what's called probable cause, and that is that they believe there's a probability that based upon the information introduced by the prosecutor the crime may have been committed. Do you understand that?

(continued . . .)

THE DEFENDANT: Yes, sir.

THE COURT: Now, do you understand you can waive your right to be charged by the grand jury and agree to this case being proceeded against you on an information filed by the prosecutor? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, you have an absolute constitutional right to be charged by way of the indictment by a grand jury, and the only way that an information can be filed against you charging you with any offenses is that you have to agree to the filing of the information and a waiver of the charges be presented to the grand jury. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that a grand jury may or may not indict you based upon what they hear—the evidence—from the prosecutor? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, do you understand that if you waive indictment by the grand jury this case is going to proceed against you on the prosecuting attorney's information just as if you had been indicted? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, have you discussed the option of waiving your right to indictment by the grand jury with your attorneys?

THE DEFENDANT: Yes.

THE COURT: Do you understand what your rights are regarding indictment by the grand jury?

(continued . . .)

B. Petitioner's Guilty Plea Was Voluntary

Petitioner also contends that his guilty plea was involuntary. Although Petitioner did not raise this ground in his second amended petition, the circuit court addressed this claim because Petitioner raised it in earlier pleadings as part of the *Losh* checklist.[15] The circuit court found that Petitioner knowingly and intelligently waived his

---

THE DEFENDANT: Yes.

THE COURT: Has anyone threatened you to get you to waive your right to indictment by the grand jury?

THE DEFENDANT: No.

THE COURT: Has anyone promised you anything, apart from this plea agreement, to cause you to waive your right to indictment by the grand jury?

THE DEFENDANT: No.

THE COURT: Okay. Have you understood everything up to this point?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about anything I've spoken to you about so far?

THE DEFENDANT: No.

THE COURT: Understanding everything I've told you, Mr. Montgomery, and having no questions, do you wish to waive your right to indictment by the grand jury?

THE DEFENDANT: Yes.

[15] *See Losh v. McKenzie*, 166 W. Va. 762, 768, 277 S.E.2d 606, 611 (1981) (listing prominent grounds most frequently raised by petitioners in habeas corpus proceedings).

constitutional rights and freely, voluntarily, and intelligently entered into the plea agreement. We agree.

A habeas petitioner seeking to overturn his guilty plea bears the burden of persuasion with respect to the voluntariness of the plea. *See* Syl. Pt. 3, *State ex rel. Clancy v. Coiner,* 154 W. Va. 857, 179 S.E.2d 726 (1971) ("The burden of proving that a plea was involuntarily made rests upon the pleader."); *accord* Syl. Pt. 1, *State ex rel. Wilson v. Hedrick,* 180 W. Va. 689, 379 S.E.2d 493 (1989). As the United States Supreme Court has noted, statements made at plea allocutions "carry a strong presumption of verity" and "constitute a formidable barrier" in any subsequent collateral proceeding. *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

Petitioner claims that his counsel failed to educate him about the consequences of his guilty plea and misrepresented his involvement in the crime without even knowing that exact involvement because the ballistics report was not completed. However, Petitioner's statements at the plea hearing demonstrate that he entered the guilty plea voluntarily with full knowledge of the charge and the consequences of plea. Moreover, Petitioner was aware that the ballistics report was not yet completed and he still chose to accept the plea. Petitioner knew exactly what the consequences of his guilty plea would be because they were outlined in the binding plea agreement itself and discussed at length by the circuit court during the plea colloquy. This evidence convinces us that Petitioner's guilty plea represented his voluntary and intelligent choice.

23

Petitioner's guilty plea is not rendered invalid simply because he is now motivated by the unfounded belief that he could possibly have obtained a more favorable plea offer from the State had he waited on the results of the ballistics report. As discussed above, Brandon Flack—who was not even armed with a weapon—was convicted of first-degree murder, first-degree robbery, and conspiracy, and received a lengthy prison sentence. Thus, the results of the ballistics report were not only inconsequential to the criminal charges Petitioner faced, they were wholly unrelated to the voluntariness of his guilty plea.[16]

---

[16] Even if Petitioner did miscalculate the nature of the evidence against him, our analysis of the issue would not change. As the United States Supreme Court has recognized,

> [o]ften the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Brady v. U.S.*, 397 U.S. 742, 756-57 (1970).

24

C. Petitioner Has Not Demonstrated Ineffective Assistance of Counsel

Finally, Petitioner raises an ineffective assistance of counsel claim. Claims of ineffective assistance of counsel are governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668 (1984), and subsequently adopted by this Court in syllabus point five of *State v. Miller,* 194 W. Va. 3, 459 S.E.2d 114 (1995):

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

In *Hill v. Lockhart,* 474 U.S. 52 (1985), the United States Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58. In the context of guilty pleas, the second prong, or prejudice requirement of *Strickland*, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. Consistent with *Hill,* this Court held in syllabus point six of *Vernatter*, 207 W. Va. 11, 528 S.E.2d 207, that

> [i]n cases involving a criminal conviction based upon a guilty plea, the prejudice requirement of the two-part test established by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller,* 194

25

W. Va. 3, 459 S.E.2d 114 (1995), demands that a habeas petitioner show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

With regard to the first prong of *Strickland*, Petitioner contends his trial counsel, Phillip Scantlebury and David Smith, were ineffective when they: (1) allowed him to enter into a guilty plea to first-degree murder based upon information; (2) misrepresented that Petitioner's bullet killed the victim before the forensic report was received; and (3) failed to explain the potential mitigating circumstances had they waited to receive the ballistics report. As explained below, these arguments are without merit.

First, this Court gives substantial deference to the judgment of defense counsel on review of an ineffective assistance claim particularly in guilty plea cases. *See Vernatter*, 207 W. Va. at 17, 528 S.E.2d at 213 ("The petitioner's burden in this regard is heavy, as there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]'") (quoting *Strickland*, 466 U.S. at 689). In many cases, as the Fourth Circuit Court of Appeals has aptly stated, "[w]here there is no defense on the merits and the prosecution's case is readily provable, nothing is gained for the defendant by pleading not guilty" and a client should be advised strongly to plead guilty. *United States v. Jones*, 392 F.2d 567, 569 n.3 (4th Cir. 1968). Therefore, we decline to find that Petitioner's trial counsel was ineffective by advising him to plead guilty to first-degree murder by way of information considering the overwhelming evidence of his guilt. Under these circumstances, it was eminently reasonable for counsel

26

to recommend that Petitioner consent to the filing of an information so that he could accept this plea offer. As Petitioner admitted at Brandon Flack's trial, he wanted to plead guilty before his co-defendants could because he was trying to avoid a life sentence *without* the possibility of parole.

Second, Petitioner offers no evidentiary support for his claim that trial counsel misrepresented that it was Petitioner's bullet that killed the victim before receipt of the ballistics report. In any event, it would be quite reasonable for one to assume that Petitioner's weapon fired the fatal shot when Petitioner himself believed he shot Matthew Flack in the face.

And third, Petitioner wholly ignores the nature of his crimes and potential sentences when he speculates that had counsel waited to receive the ballistics report, this "mitigating" evidence would somehow assure a more favorable plea deal. This evidence was in no way mitigating considering Petitioner participated in a violent home invasion during which the victim was shot and killed. Petitioner faced the same charges as his co-defendants—first-degree murder, first-degree robbery, and conspiracy—even if Petitioner did not personally do the killing and even if he had no intent to kill. *State v. Sims*, 162 W. Va. 212, 248 S.E.2d 834.

> We recognize that
>
> [t]he principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a

27

list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable . . . A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration [of pursuits that would ultimately prove futile].

*Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973).

Accordingly, because Petitioner has failed to establish deficient performance by trial counsel—the first prong of *Strickland*—this Court need not engage in analysis of the second prong.[17] But even if this Court were to assume that counsel's performance was deficient, Petitioner has also failed to show how he was prejudiced.

With regard to the prejudice prong of *Strickland*, Petitioner does not state there is a reasonable probability that he would have rejected the State's plea offer and gone to trial. Rather, Petitioner contends that but for his counsel's ineffective assistance, "he would have asked them to see if a better plea deal could be reached had he known that the bullet [that killed Matthew Flack] was not fired from his weapon." Petitioner

---

[17] When deciding ineffective-assistance-of-counsel claims, a court need not address both prongs of *Strickland*, but may dispose of the claim based solely on a petitioner's failure to meet either prong. Syl. Pt. 5, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995).

28

essentially wants to negotiate a more favorable plea agreement without the risk of losing the benefits he received from the plea deal he accepted. As a result, Petitioner's allegation falls short of the *Hill/Vernatter* standard and is insufficient to establish actual prejudice. *Hill,* 474 U.S. at 59; *Vernatter*, 207 W. Va. at 18, 528 S.E.2d at 214; *see also Short v. U.S.*, 471 F.3d 686, 696-97 (6th Cir. 2006) ("petitioner's claim of prejudice rests upon an assertion that he wound up with a less favorable plea or sentence than he otherwise would have accepted with the advice of competent counsel. Such a claim is insufficient to establish actual prejudice.").

## IV. CONCLUSION

We affirm the August 30, 2016, order of the Circuit Court of Mercer County.

Affirmed.